**UNITED STATES BANKRUPTCY COURT**
**THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| East Coast TVs Inc, et al., | Case No. 18-40765 (ESS) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF ISAAC BARNATHAN PURSUANT TO RULE 1007-4 OF THE LOCAL BANKRUPTCY RULES FOR THE EASTERN DISTRICT OF NEW YORK IN SUPPORT OF FIRST-DAY MOTIONS**

I, Isaac Barnathan, hereby declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.      I am the President of both Garden State Installations II, Inc ("Garden State") and East Coast TVs Inc ("East Coast") (collectively referred to as the "Debtors"). I am familiar with the day-to-day operations, business and financial affairs of the Debtors.

2.      On February 9, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Both these petitions were filed under the small business election. In order to enable the Debtors to operate effectively and minimize potential adverse effects from the commencement of these chapter 11 cases (the "Chapter 11 Cases"), the Debtors have requested certain relief in "first day" applications and motions filed with the Court (collectively, the "First Day Motions"). The First Day Motions seek, among other things to, (a) ensure the continuation of the Debtors' cash management system and other business operations without interruption, (b) maintain employee morale and confidence of the Debtors' business partners, (c) honor all checks to vendors paid

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: East Coast TVs Inc (0300) and Garden State Installations II, Inc (4391).

upon delivery of merchandise ("COD") and (d) establish certain administrative procedures that will promote a seamless transition into chapter 11.  This relief is critical to the Debtors' restructuring efforts.

3.    I submit this Declaration in support of the Debtors' First Day Motions.  Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Motion.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience and knowledge, and/or information provided to me in reports concerning the operations and financial affairs of the Debtors.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

4.    This Declaration is intended to provide a summary overview of the Debtors and these Chapter 11 Cases.  Sections I through V of this Declaration provide a description of the Debtors' business, corporate history and organizational structure, capital structure, the circumstances giving rise to the commencement of these Chapter 11 Cases and the First Day Motions to be filed substantially contemporaneously with this Declaration.  Part VI lists the schedules of information required by Rule 1007-4 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

## I.  Background

### A.    The Debtors' Business

5.    The East Coast TVs Inc Debtor was formed in 2009 and the Garden State Installations II, Inc Debtor was formed in 2015. The Debtors' principal place of business is 601 West Linden Avenue, Linden, NJ 07036.  Both of the Debtors maintain certain of their books and records at 724 Avenue P, Brooklyn, NY 11223.

2

6.    The Debtors are e-commerce merchants, engaged in the sale of televisions, small appliances and other various electronics and accessories, primarily via the internet.

7.    Operationally, the Debtors have built a strong company with a valuable and commendable reputation throughout the industry, primarily achieved by hiring a good, hard-working team and the timely fulfillment of online orders.

8.    In order to generate sales, the Debtors rely on aggressive pricing, the attractive image and functionality of its website, strategic advertising and prompt delivery.

9.    As of the Petition Date, the Debtors have 15 employees, including myself.  For the fiscal period ended December 31, 2017, revenues from East Coast operations were approximately $12 million, and Garden States's revenues were approximately $6.4 million.

10.    The Debtors filed these Chapter 11 Cases in order to reduce debt and enhance the Debtors' liquidity, as well as to seek an investor to solidify the Debtors' long-term growth prospects and operating potential.  If the Debtors cannot timely find an investor, the Debtors will proceed with a sale of its businesses pursuant to Section 363 of the Bankruptcy Code and to thereafter file a plan of liquidation.

11.    Operations.  Customers can order products from the Debtors' website seven days per week. Many customer orders are processed immediately. Other customers, depending on what product they have purchased, may receive a call from a customer service representative with the opportunity to purchase further related accessories, warranties or "white glove" service and installation.  Once the customer's order is complete, the Debtors then processes the order.

12.    Currently, the Debtors maintains a very limited inventory with a value of less than $200,000.  In normal times, the Debtors would stock most items offered on-line at the Debtors' warehouse facility.  For certain customer orders, the Debtors will order the product from its

3

supply chain and the supplier will "drop-ship" the product from the vendor directly to the customer. The turnaround time from placement of order to delivery is approximately 2 to 10 days for in stock items, depending on the size of the product. The Debtors require 100% of the purchase price when a sales order is accepted. Customer payments are largely made via credit card, however, customers can also make payment in cash, check or direct wire to the Debtors.

13.    <u>Marketing</u>. In years past, the Debtors advertised in newspapers and magazines in an attempt to capitalize the marketplace. Since the trend toward internet sales, the Debtors' marketing strategy has been to shift away from hard-print advertising and instead focus on advertising on "price comparison" web sites and throughout the internet.

14.    The Debtors carefully monitor sales and obtain other information reflecting trends in the electronics industry and changes in customer preferences. The Debtors also review industry publications, attend trade shows and maintain close contact with suppliers to aid in identifying trends and changes in the industry.

15.    <u>Competition</u>. The Debtors compete with other internet electronic sale websites as well as electronic product retailers that own retail stores and maintain internet sites for online purchasing. The Debtors believe that the principal areas of competition with respect to business are price, product availability, delivery time, advertising, and service. The Debtors also believe that they compete effectively with such retailers because their website offers a broader assortment of electronics and accessories than most of their competitors and such merchandise is offered at attractive prices.

16.    <u>Credit Card Companies</u>. The credit card companies have, for the past several years, paid the Debtors shortly after credit card purchases were made by customers. In this

4

connector, the Debtors are currently a party to an agreement with Cynergy Data to process payments through Visa and MasterCard.

In addition, the Debtors process sales through American Express. That agreement expired, but American Express is currently holding no less than $25,000 that is due to the Debtors.

### B.    Commencement of the Chapter 11 Cases

17.    On the Petition Date, the Debtors each commenced a voluntary case pursuant to chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory creditors' committee has been appointed in these Chapter 11 Cases.

18.    Through these Chapter 11 Cases, the Debtors will be seeking to find an investor to provide capital to reduce the substantial debt and burden that hinders its ability to effectively compete in a competitive, yet profitable, market.  A successful restructuring will allow the Debtors to concentrate their resources on generating revenue and expanding market share.

19.    To facilitate the restructuring and provide assurances to key constituents -- such as employees, customers and vendors -- that the Debtors' operations will continue uninterrupted, the Debtors have developed key strategies to effectuate a smooth transition of its operations into chapter 11, including the following:

(a)    developing and presenting a comprehensive request for the "first-day" relief requested in the First Day Motions, including relief targeted to ensure that employee obligations such as wages and benefits are honored, and cash management system maintained; and

(b)    hiring and seeking to retain qualified and experienced professionals to assist the Debtors with their Chapter 11 Cases.

20.    The following parts of this Declaration provide additional information regarding the facts supporting the Debtors' Chapter 11 Cases.

5

## II.  **Corporate History and Organizational Structure**

21.    Each of the Debtors is a New Jersey corporation, and neither Debtor has any subsidiaries.  The equity of each of the Debtors is owned 100% by Isaac Barnathan.

22.    The Debtors, known to customers as "East Coast TV," has been a family owned and operated business since its inception.  Previously, the Debtors had tried to operate as under the policy of pay on delivery. But, the increased competition and weak economy forced the business to get paid first and then deliver.

23.    The Debtors initially expanded into a larger warehousing space.  But due to the industry pressures, the Debtors closed that warehouse operation and now operate their internet sale business solely out of the Linden location.

## III.  **Prepetition Indebtedness and Capital Structure**

24.    The Debtors are leveraged, with a total of approximately $1.5 million in prepetition principal financial debt, as of the Petition Date, as more fully described below:

25.    <u>Unsecured Trade Debt</u>: As an electronic retailer, the Debtors purchase inventory from dozens of merchandise vendors.  Historically, the Debtors purchased merchandise under normal purchase commitments or customer demands in the ordinary course.  As of the Petition Date, the Debtors estimate that their unsecured trade debt will total not less than approximately $700,000.

26.    <u>Unsecured Loans</u>: Over time, the Debtors' officers have provided unsecured loans to the Company in the approximate amount of $500,000.

## IV.  **Events Leading to Chapter 11**

27.    The Debtors have incurred net losses that have reduced their working capital.  In an effort to address its liquidity constraints, the Debtors implemented a number of cost cutting

6

measures, including termination of personnel, salary reductions for certain senior level employees, and reduction in overhead.

28.     However, due to the continuing deterioration of the current economy, the Debtors' liquidity continues to be negatively impacted.  As a consequence of such events, amounts payable by the Debtors to their suppliers were not paid in full, even after accounting for their extended due dates.

29.     The Debtors pride themselves on their customer service and a quick turnover of purchased goods to the customer.  In previous years, a customer who purchased goods from the Debtors could expect to receive their purchased items in as quickly as one to two days, depending upon delivery location.  However, due to the Debtors' liquidity constraints, various merchandise vendors restricted the Debtors' available trade credit and payment terms and, in some instances, the Debtors' terms were changed to cash on delivery.  These factors strain operations because the Debtors found it more difficult to sustain adequate product inventory and caused significant delays in their delivery of goods to customers.  As a result, sales were impaired, and issues related to non-receipt of goods continued to adversely impact the Debtors' liquidity.

30.     Moreover, while the electronics industry is one of the fastest growing industry, it is also cyclical, fluctuating with the general economic cycles and uncertainty in future economic prospects.  The slowdown in the U.S. economy and other national, regional or global economic conditions adversely affects the Debtors' businesses by reducing overall consumer spending or by causing customers to shift their spending to products other than those sold by the Debtors or to products sold by the Debtors that are less profitable than other product choices.  The Debtors

7

believe these factors have impacted consumer demand and spending and negatively affected their businesses.

31.    In addition, the electronic retail business is highly competitive and includes competition from traditional electronic retailers in stores and online as well as numerous discount electronic wholesalers.  Although the Debtors enjoy a positive reputation and carry a broad selection of products, many of their competitors have considerably greater financial resources.

## V.  First Day Motions

32.    In furtherance of its objectives, the Debtors intend to file a number of First Day Motions and proposed orders in the days following this Declaration, and respectfully requests that the Court enter the proposed orders granting such First Day Motions.  I have reviewed substantially complete drafts of each of the First Day Motions and proposed orders (including the exhibits thereto), and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I believe that the relief sought in each of the First Day Motions (a) is vital to enable the Debtors to make the transition to, and operate in, chapter 11 with a minimum interruption or disruption to its business or loss of productivity or value and (b) constitutes a critical element in achieving the Debtors' successful reorganization.

## VI.  Information Required by Local Rule 1007-4

33.    Local Bankruptcy Rule 1007-4 requires that the Debtors provide certain information, which is set forth below.

34.    The information required by Local Rule 1007-4(a)(ii) and (iii) is set forth in Parts I through V above.

35.    In response to the information requested in Local Rule 1007-4(a)(i), the Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D).

8

36.     In response to the information requested in Local Rule 1007-4(a)(iv), to the best of my knowledge, no committee has been organized prior to the Petition Date.

37.     Pursuant to Local Rule 1007-4(a)(v), Schedule 1 hereto lists the following information with respect to each of the holders on a consolidated basis of the Debtors' 20 largest unsecured claims, excluding claims of insiders: the creditor's name, address and telephone number (if available); the name(s) of person(s) familiar with the Debtors' accounts, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.  In each case, the claim amounts listed on Schedule 1 are estimated and subject to verification.  In addition, the Debtors reserve their rights to assert remedies, defenses, counterclaims and offsets with respect to each claim.

38.     Pursuant to Local Rule 1007-4(a)(vii), Schedule 2 hereto provides a summary of the Debtors' assets and liabilities.

39.     Pursuant to Local Rule 1007-4(a)(viii), Schedule 3 hereto provides information relating to the number and classes of shares of stock, debentures, or other securities of the Debtors that are publicly held, and the number of holders thereof, listing separately those held by each of the Debtors' officers and directors and the amounts so held.

40.     Pursuant to Local Rule 1007-4(a)(ix), Schedule 4 hereto provides a list of all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending.

9

41.    Pursuant to Local Rule 1007-4(a)(x), Schedule 5 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtors operates its business.

42.    Pursuant to Local Rule 1007-4(a)(xi), Schedule 6 hereto provides the location of the Debtors' significant assets, the location of its books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

43.    Pursuant to Local Rule 1007-4(a)(xii), Schedule 7 hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or its property where a judgment against the debtor or a seizure of its property may be imminent.

44.    Pursuant to Local Rule 1007-4(a)(xiii), Schedule 8 hereto provides a list of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors and a description of their relevant responsibilities and experience.

45.    Pursuant to Local Rule 1007-4(a)(xiv), Schedule 9 hereto provides a list of the estimated amount of weekly payroll to the Debtors' employees (exclusive of officers, directors, stockholders, partners and members) for the thirty (30) day period following the filing of the Debtors' chapter 11 petition.

46.    Pursuant to Local Rule 1007-4(a)(xv), Schedule 10 hereto provides a list of the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the chapter 11 petition to the Debtors' officers and directors and any financial or business consultants that have been retained by the Debtors.

47.    Pursuant to Local Rule 1007-4(a)(xvi), Schedule 11 hereto provides for the thirty (30) day period following the filing of the chapter 11 petition, a list of the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that

remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

## VII.  <u>Conclusion</u>

48.    I hereby declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief, and respectfully request that all of the relief requested in the First Day Motions be granted, together with such other and further relief as is just.


[Remainder of page intentionally left blank]

11

Dated: February 12, 2018
       Brooklyn, New York

                 /s/ *Isaac Barnathan*
                 **ISAAC BARNATHAN**

4503450-3

## SCHEDULE 1

### 20 Largest Unsecured Claims (Excluding Insiders)[2]

As required under Local Rule 1007-4(a)(v), the following is a schedule of the Debtors' 20 largest unsecured claims, excluding claims of insiders.

| CREDITOR | CONTACT | AMOUNT OF CLAIM | CONTINGENT, UNLIQUIDATED, DISPUTED, OR PARTIALLY SECURED |
|---|---|---|---|
| Cynergy Data LLC | P.O. Box 246 c/o Printing Payment-Systems Alpharetta, GA 30009 | $1,000,000.00 | Unliquidated |
| Henry Barnathan | 724 Avenue P Brooklyn, NY 11223 | $250,000.00 | Unliquidated |
| Beach Camera Electronics | 80 Carter Dr. Edison, NJ 08817 t. 732.289.9967 | $176,864.00 | -- |
| Wholesale USA, Inc. | 52 Wenwood Dr. Massapequa Park, NY 11762 wholesaleusa@gmail.com | $174,645.00 | -- |
| Warrens World | 2655 Nostrand Ave Attn: Albert Baker Brooklyn, NY 11210 customerservice@warrensworld.com t. 718.258.004 | $132,083.00 | -- |
| Lucid Audio Video Inc | 333 South Van Brunt Attn: Arthur Chitikian Englewood, NJ 07631 t. 201.233.6653 | $106,530.00 | -- |

---

[2] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.  All claims are subject to customary offsets, rebates, discounts, reconciliations, credits and adjustments, which are not reflected on this schedule.

| CREDITOR | CONTACT | AMOUNT OF CLAIM | CONTINGENT, UNLIQUIDATED, DISPUTED, OR PARTIALLY SECURED |
|---|---|---|---|
| Mack Camera | 200 Morris Ave Springfield, NJ 07081 info@mackretail.com t. 973.467.2291 | $28,000.00 | -- |
| Skyview Appliance | 2695 Coney Island Ave Brooklyn, NY 11223 f. 718-332-4494 | $26,527.00 | -- |
| Isaac Barnathan | 724 Avenue P Brooklyn, NY 11223 | $26,000.00 | -- |
| Shapiro and Associates | 3145 Coney Island Ave Brooklyn, NY 11235 f. 347-462-9905 | $25,000.00 | -- |
| Electronics Expo | 70 Demerest Drive Wayne, NJ 07470 cs@electronics-expo.com t. 888.707.3976 | $11,113.00 | -- |
| Fedex Corporation | New Jersey | $9,000.00 | -- |
| 601 Linden LLC | 543 Bedford Ave P.O. Box 184 Brooklyn, NY 11211 | $4,000.00 | -- |
| UPS | | $2,784.58 | -- |
| Tuff Manufacturing | 140 58th Street Suite 3k Brooklyn, NY 11220 | $1,738.50 | -- |

4503450-3

## **SCHEDULE 2**

### **Summary of Assets and Liabilities**

As required under Local Rule 1007-4(a)(vii), the following is a summary of the Debtors' assets and liabilities.  The following data is the most current information available and reflects the Debtors' financial condition as of January 31, 2018.  The information set forth below shall not constitute an admission on behalf of the Debtors, nor is it binding upon the Debtors.  The Debtors reserve all rights to challenge the priorities, nature, amount, and status of any claim or debt and of any lien or security interest securing such interest or debt.

Total Assets:  $350,000

Total Liabilities:  $1,500,000

4503450-3

## **SCHEDULE 3**

**Information Relating to Publicly Held Stock, Debenture and Securities of the Debtors**

As required under Local Rule 1007-4(a)(ix), the following is a list of the stock, debenture and other securities of the debtor that are publicly held.

None.

As required under Local Rule 1007-4(a)(ix), the following is a list of the stock, debenture and other securities of the debtors that are held by the Debtors' directors and officers.

100% of the equity is owned by Isaac Barnathan.

16

## SCHEDULE 4

### Debtors' Property Not in the Debtors' Possession

As required under Local Rule 1007-4(a)(ix), the following describes the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor or agent for any such entity.

Reserve – Credit Card

American Express $25,000

Cynergy Data (Via, MC) $100,000

Landlord – security deposit $4,000

## **SCHEDULE 5**

### **Debtors' Owned and Leased Property**

As required under Local Rule 1007-4(a)(x), the following lists premises owned, leased or held under other arrangement from which the Debtor operate their business.

### **Owned Property**

None.

### **Leased Property**

601 West Linden Avenue, Linden, NJ 07036.

## **SCHEDULE 6**

As required under Local Rule 1007-4(a)(xi), the following describes the location of the Debtors' significant assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

### **Location of the Debtors' Significant Assets**

The Debtor's significant assets are located at 601 West Linden Avenue, Linden, NJ 07036 and TD Bank, N.A.

### **Location of the Debtors' Books and Records**

The Debtor's books and records are maintained at 601 West Linden Avenue, Linden, NJ 07036 and 724 Avenue P, Brooklyn, NY 11223.

### **Nature, Location, and Value of Assets Located Outside of the United States**

None.

4503450-3

## SCHEDULE 7

### Litigation Commenced Against the Debtors

As required under Local Rule 1007-4(a)(xii), the following is a list of the nature and status of each action or proceeding against the Debtor where a judgment against the Debtor or a seizure of their property may be imminent.

None.

4503450-3

## SCHEDULE 8

### Senior Management

As required under Local Rule 1007-4(a)(xiii), the following lists the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

| NAME/POSITION | EXPERIENCE/RESPONSIBILITIES |
| --- | --- |
| Isaac Barnathan, President | Mr. Isaac Barnathan is a founding member of the Debtors.  Mr. Barnathan's responsibilities include managing the day to day operations of the business and communications with vendors and suppliers. |
| Henry Barnathan, Vice President | Mr. Henry Barnathan is a founding member of the Debtors. |

4503450-3

## SCHEDULE 9

### Payments to Employees

As required under Local Rule 1007-4(a)(xiv), the following provides the estimated amount of weekly payroll to the Debtors' employees (exclusive of officers, directors, stockholders, partners and members) for the 30 day period following the filing of these chapter 11 petitions.

| **PAYMENTS TO EMPLOYEES (NOT INCLUDING OFFICERS, DIRECTORS, STOCKHOLDERS, PARTNERS AND MEMBERS)** | $125,000 |
|---|---|

## **SCHEDULE 10**

**Payments to Officers, Directors and Any Financial or Business Consultants**

As required under Local Rule 1007-4(a)(xv), the following provides the estimated amount paid and proposed to be paid to officers, directors, and any financial or business consultants for services for the 30 day period following the filing of these chapter 11 petitions.

| | |
|---|---|
| **PAYMENTS TO OFFICERS AND DIRECTORS** | $10,000 |
| **PAYMENTS TO FINANCIAL OR BUSINESS CONSULTANTS** | $0 |

23

## <u>SCHEDULE 11</u>

### Cash Receipts and Disbursements, Cash Gain or Loss,
### and Unpaid Obligations and Receivables

As required under Local Rule 1007-4(a)(xvi), the following is a schedule for the 30 day period following the filing of these chapter 11 petitions of estimated (i) cash receipts, (ii) cash disbursements, (iii) net cash gain or loss, (iv) obligations expected to accrue but remain unpaid, other than professional fees and (v) receivables expected to accrue but remain unpaid, other than professional fees.

| | |
|---|---|
| **ESTIMATED CASH RECEIPTS** | $800,000 |
| **ESTIMATED CASH DISBURSEMENTS** | $730,000 |
| **ESTIMATED NET CASH GAIN OR LOSS** | $70,000 |
| **ESTIMATED OBLIGATIONS EXPECTED TO ACCRUE BUT REMAIN UNPAID (OTHER THAN PROFESSIONAL FEES)** | $0 |
| **ESTIMATED RECEIVABLES EXPECTED TO ACCRUE BUT REMAIN UNPAID** | $150,000 |

24

4503450-3